## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

_____
|                                      )
WILTONE FLOREXIL, individually         )
and on behalf of all others            )
similarly situated,                    )
                                       )
                   Plaintiffs,         )      Civil Action No.
                                       )
v.                                     )      **JURY TRIAL DEMANDED**
                                       )
GENERAL FREIGHT EXPERTS, INC.,         )
GENERAL FREIGHT EXPERTS, LLC,          )
and TRR CARGO LLC,                     )
                                       )
                   Defendants.         )
_____       )

## CLASS ACTION COMPLAINT AND JURY DEMAND

### I.    INTRODUCTION

1.      This is a class action lawsuit brought on behalf of individuals who have

signed agreements to be contractor drivers for Defendants General Freight Experts, Inc.,

General Freight Experts, LLC, and TRR Cargo LLC (collectively, "Defendants").

2.      Plaintiff Wiltone Florexil alleges, on behalf of himself and others similarly

situated, that Defendants violated 49 U.S.C. § 14704 and its regulations, referred to

hereinafter as the Truth-in-Leasing regulations.

3.      Plaintiff further alleges, on behalf of himself and others similarly situated,

that Defendant General Freight Experts, Inc. has violated the federal Fair Labor

Standards Act ("FLSA").

4.      Plaintiff seeks damages, injunctive relief, and attorneys' fees and costs, and all other allowable relief.

## PARTIES

5.      Plaintiff Wiltone Florexil is an adult resident of Riverview, Hillsborough County, Florida.  He was a contractor driver for Defendants from approximately January to March 2023.  He was an "employee" of Defendant General Freight Experts, Inc. within the meaning of the FLSA.

6.      For the Truth-in-Leasing claim, Plaintiff brings this action on behalf of a putative class of similarly situated individuals, namely all individuals who have worked as contractor drivers for Defendants since May 10, 2019.

7.      For the FLSA claim, Plaintiff brings this action on behalf of all similarly situated individuals who may choose to "opt in" to this action pursuant to the FLSA, 29 U.S.C. § 216(b).  The claims under the FLSA meet the requirements for collective action certification set forth in 29 U.S.C. § 216(b).

8.      Defendant General Freight Experts, Inc. is an Ohio company, incorporated by Sardorbek Isametdinov, with offices in Brunswick, Ohio and in Lake City, Florida.

9.      Defendant General Freight Experts, Inc. is registered under MC-814088 and US DOT Number 2372515.  According to the SAFER – FMCSA management information systems, General Freight Experts, Inc. reported that it operated 60 power units (trucks) and had 65 drivers as of September 2022.  *See* https://safer.fmcsa.dot.gov/query.asp?searchtype=ANY&query_type=queryCarrierSn apshot&query_param=USDOT&original_query_param=NAME&query_string=2372515

&original_query_string=GENERAL%20FREIGHT%20EXPERTS%20INC (last visited

Apr. 11, 2023).

10.     Defendant General Freight Experts, LLC is a Florida limited liability

company with the following authorized managers: CFO Sardorbek Isametdinov, CEO

Chingiz Askerov, and MFO /CEO Muzaffar Mamadjanov.

11.     Muzaffar Mamadjanov also serves as a manager for General Freight

Experts, Inc. and has the authority to execute contracts on behalf of General Freight

Experts, Inc.

12.     Defendant TRR Cargo LLC is a Florida limited liability company,

managed by Muzaffar Mamadjanov and Chingiz Askerov.

13.     Defendants General Freight Experts LLC and TRR Cargo LLC share a

principal place of business in Davie, Florida.

14.     Defendants General Freight Experts, Inc., General Freight Experts LLC,

and TRR Cargo LLC (together "Defendants") are affiliated entities with common

ownership and common officers, subject to the requirements of authorized carriers

under the Truth-in-Leasing regulations.

## JURISDICTION AND VENUE

15.     This Court has federal question jurisdiction over Plaintiffs' claims under

28 U.S.C. § 1331.

16.     The Court has personal jurisdiction over Defendants because all three

have corporate offices in Florida and do business in the State of Florida.

17.     The Court has personal jurisdiction over Plaintiff and the putative class because they have worked in Florida for companies that do business in Florida.

18.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to the claims set forth in this complaint occurred in this judicial district.

19.     For the FLSA claims against Defendant General Freight Experts, Inc., Plaintiff brings this action on behalf of all similarly situated individuals who may choose to "opt in" to this action pursuant to the FLSA, 29 U.S.C. § 216(b).  The claims under the FLSA meet the requirements for collective action certification set forth in 29 U.S.C. § 216(b).

20.     Plaintiff and all others similarly situated are individually covered by the FLSA because they engaged in commerce or in the production of goods for commerce.

21.     Pursuant to 29 U.S.C. § 216(b), Plaintiff consents to sue as a plaintiff under the FLSA.  His consent to sue form is attached as Exhibit A.

## FACTS

22.     Defendant General Freight Experts, Inc. is a trucking company.

23.     Defendant General Freight Experts, Inc. is licensed with the U.S. Department of Transportation.

24.     Defendant General Freight Experts, Inc. employs drivers to transport its customers' freight in interstate commerce.

25.     Defendant General Freight Experts, Inc. is a motor carrier and an authorized carrier under 49 U.S.C. §§ 13901 and 13902, *et seq*.

26.     Defendant General Freight Experts, Inc. transports property in equipment leased from and to individual truck drivers and entities, including Plaintiff.

27.     Defendant TRR Cargo, LLC purports to be the "supplier" of trucks leased by Defendant General Freight Experts, Inc. to drivers.

28.     Defendant TRR Cargo LLC was the recipient of lease payments deducted from Plaintiff's and other drivers' compensation by Defendant General Freight Experts, Inc.

29.     Defendant General Freight Experts, LLC holds itself out as a freight broker that provides logistics and transportation services throughout the United States and Canada.

30.     On information and belief, the transportation services offered by General Freight Experts, LLC are in fact provided by Defendant General Freight Experts, Inc.

**TRUTH-IN-LEASING ALLEGATIONS**

31.     Under federal law, motor carriers such as Defendant General Freight Experts, Inc. may transport property in equipment that they themselves do not own only if the equipment is subject to a written lease agreement that meets DOT's regulatory requirements, known as the Truth-in-Leasing regulations (the "TIL regulations"), 49 C.F.R. § 376, *et seq*.

32.     Defendants General Freight Experts, Inc., TRR Cargo, LLC, and General Freight Experts, LLC are affiliated entities that have common ownership and common officers and together are liable as "authorized carriers" within the meaning of the Truth-in-Leasing regulations.

33.     On information and belief, Defendants utilize the three affiliated corporate entities to obfuscate the ownership of assets and to conceal from drivers the relationship between the entities, for purposes of skimming revenue, making undisclosed profits off of drivers, and generally skirting the requirements of the Truth-in-Leasing regulations.

34.     As explained by the Interstate Commerce Commission when the regulations were promulgated, the purpose of the TIL regulations is to "to eliminate or reduce opportunities for skimming and other illegal or inequitable practices." *Lease and Interchange of Vehicles*, 131 M.C.C. 141, 142 (1979).

35.     TIL regulations require the motor carrier's equipment lease to disclose, in writing, the amount that the motor carrier will pay the owner-operator as compensation. 49 C.F.R. § 376.12(d). The regulations also require that those leases disclose the details of any charge back items. *Id*. at § 376.12(h). When the lessor's revenue is based on a percentage of the gross revenue for a shipment, the lease must specify that the carrier will provide the lessor a copy of the rated freight bill, or any other documentation used for a shipment containing the same information, at or before the time of settlement. *Id*. at § 376.12(g). Leases between a motor carrier and an owner-operator shall specify that the owner-operator is not required to purchase or rent any products, equipment, or services from the motor carrier.  *Id.* at § 376.12(i).  Finally, the regulations require the motor carrier to adhere to the terms of the lease. *Id*. § 376.12 (introductory paragraph).

36.     In order to become contractor drivers for Defendants, individuals must sign several documents.

37.     Plaintiff signed an Independent Contractor Agreement with General Freight Experts, Inc. on January 10, 2023, a copy of which is attached as Exhibit B.

38.     The Independent Contractor Agreement is a standard-form agreement that Defendants presented to Plaintiff and other contractor drivers on a take-it-or-leave it basis and which all contractor drivers are required to sign.

39.     Plaintiff also signed an Equipment Lease Agreement with General Freight Experts, Inc. on January 10, 2023, a copy of which is attached as Exhibit C.

40.     The Equipment Lease Agreement is a standard-form agreement that was presented to Plaintiff and other contractor drivers on a take-it-or-leave it basis and which all contractor drivers are required to sign.

41.     Defendants require contractor drivers to lease their trucks from Defendants General Freight Experts, Inc.

42.     An addendum to the Independent Contractor Agreement, however, indicates that drivers' lease payments are remitted to Defendant TRR Cargo, LLC.

43.     On information and belief, this arrangement is intended to obscure the fact that Defendants require drivers to lease their trucks from Defendant General Freight Experts, Inc. as a condition of entering into the Independent Contractor Agreement with Defendant General Freight Experts, Inc., in violation of 49 C.F.R. § 376.12(i).

44.     The agreements that drivers have signed with General Freight Experts, Inc., including the Independent Contractor Agreement and the Equipment Lease

Agreement, constitute leases that are subject to the requirements of the Truth-in-Leasing regulations.

45.     The Equipment Lease Agreement that Plaintiff signed stated that General Freight Experts, Inc. was the lessor of the equipment.

46.     The Independent Contractor Agreement provides that General Freight Experts, Inc. shall provide the driver with "a sum agreed upon for services, as provided in Schedule 'A.'"  Exhibit B, ¶ 8.

47.     However, General Freight Experts, Inc. does not provide Schedule A to the drivers, so they are not given the required information about their compensation in the Independent Contractor Agreement (or otherwise).

48.     Drivers' compensation is based on a percentage of revenue, purportedly 78%.

49.     The Independent Contractor Agreement does not provide that General Freight Experts, Inc. will give the driver, before or after the settlement, a copy of the rated freight bill or any other form of documentation actually used for a shipment containing the same information that would appear on a rated freight bill, as required by 49 C.F.R. § 376.12(g).

50.     General Freight Experts, Inc. does not provide the required documentation to drivers from which they can ensure that they are receiving proper compensation.

51.     General Freight Experts, Inc. typically provides only a rate confirmation document, but this document does not suffice to confirm that the proper rate is being paid to the drivers.

52.     On information and belief, the reason that General Freight Experts, Inc. does not provide proper documentation is because it fails to pay drivers all compensation owed under the Independent Contractor Agreement; for example, by failing to pass on all accessorial charges to drivers.

53.     In addition, on information and belief, General Freight Experts, Inc. has booked loads using General Freight Experts, LLC as a broker and has based the percentage of revenue paid to drivers not on revenue received by Defendants, but rather on revenue received by General Freight Experts, Inc. after General Freight Experts, LLC has taken a percentage as its "cut."

54.     This manner of calculating driver compensation is not disclosed to drivers and constitutes a form of revenue-skimming by Defendants.

55.     General Freight Experts, Inc. does not clearly specify all items that may be initially paid for by them but ultimately deducted from compensation paid to Plaintiff or other independent contractor drivers at the time of payment or settlement.

56.     Instead, the Independent Contractor Agreement sets forth a non-exhaustive list of items that may be deducted from compensation paid to Plaintiff and other independent contractor drivers.  Exhibit B, ¶ 3.

57.     General Freight Experts, Inc. does not provide a recitation as to how the amount will be calculated for each item that may be initially paid for by them but

ultimately deducted from compensation paid to Plaintiff or other independent contractor drivers at the time of payment or settlement.

58.     Instead, the Independent Contractor Agreement states that General Freight Experts, Inc. will provide "a copy of any and all documentation showing how such deductions were computed" "if requested" by Plaintiff or other independent contractor drivers.  *Id.*

59.     Under the Independent Contractor Agreement, compensation is to be paid to the driver within fifteen days after the driver submits to General Freight Experts, Inc. "the log required by the Department of Transportation and those other documents including, but not limited to the following:  shipper's bill of lading, delivery receipts, retention slips, in and out equipment/trailer interchange receipts, and U.S. Customs entry and delivery receipts."  Exhibit B, ¶ 8.

60.     General Freight Experts, Inc. does not properly and timely compensate drivers as provided in the Independent Contractor Agreement.

61.     General Freight Experts, Inc. often withholds drivers' compensation, despite the drivers complying with all requirements for compensation provided for in the Independent Contractor Agreement.

62.     Additionally, General Freight Experts, Inc. does not compensate drivers at the promised/contractual rate.

63.     General Freight Experts, Inc. also makes improper and undisclosed deductions from drivers' compensation for not submitting all paperwork relating to assignments.

64.     Plaintiff completed six loads for General Freight Experts, Inc. in January and February 2023, but he was only ever paid (partially) for two loads.

65.      He completed four loads between January 23 and February 3, 2023, but he never received compensation for those loads.

66.     In mid-March 2023, he received a pay statement listing those four loads, but the pay statement was zeroed out, and he did not receive any compensation.

67.     Mid-March is well past the time by which General Freight Experts, Inc. was required to compensate Plaintiff for those loads, per the Independent Contractor Agreement.

68.     *Inter alia*, the mid-March pay statement included a deduction of $5,800 for "Did not send BOL (LOAD # 56303)."

69.     The Independent Contractor Agreement does not disclose that General Freight Experts, Inc. may deduct from a driver's compensation the full amount of a load for which a bill of lading is not provided.

70.     On information and belief, General Freight Experts, Inc. did receive payment of the $5,800 for this load, but it did not compensate Plaintiff for it.

71.     General Freight Experts, Inc. also deducted a total of $2,572 for "Lease" from the mid-March pay statement.

72.     There is no support or basis for this $2,572 "Lease" deduction in the Independent Contractor Agreement or otherwise.

73.     Additionally, because of other undisclosed and improper deductions, drivers do not receive the full compensation to which they are entitled.

74.     General Freight Experts, Inc. deducts funds from the weekly compensation it pays contractor drivers for fuel purchases.

75.     The amounts of money General Freight Experts, Inc. deducts from contractor drivers' earnings for fuel purchases exceeds the amounts it pays third parties for fuel.

76.     The Independent Contractor Agreement provides that General Freight Experts, Inc. will reimburse drivers for expenses, including expenses for fuel.  IC Agreement, ¶ 9.

77.     Drivers pay for fuel using a fuel card provided by General Freight Experts, Inc.

78.     The amounts that drivers pay at the pump for fuel, using the fuel card provided by General Freight Experts, Inc., are deducted from their compensation as "fuel advances."

79.     However, General Freight Experts, Inc. receives a discount from fuel prices from the fuel service providers that its drivers use, including Pilot Company.

80.     On information and belief, the discounts are approximately 60 to 80 cents per gallon.

81.     General Freight Experts, Inc. requires drivers to use the fuel companies with which it has negotiated discounts.

82.     These fuel discounts are not passed on to drivers.

83.     In other words, the amounts deducted from drivers' compensation for "fuel advances" are far in excess of the amounts actually paid to the fuel companies for fuel.

84.     General Freight Experts, Inc. accordingly makes substantial profits from the deductions it takes from drivers' compensation for fuel.

85.     General Freight Experts, Inc. does not disclose this to drivers, either in the Independent Contractor Agreement or otherwise.

86.     General Freight Experts, Inc. does not state in the Independent Contractor Agreement that drivers are not required to purchase or rent any products, equipment, or services from them.

87.     General Freight Experts, Inc.'s practice of unilaterally charging contractor drivers a premium for fuel purchases is effectively forcing contractor drivers to purchase goods from them – i.e. fuel.

88.     General Freight Experts, Inc. makes other deductions from drivers' compensation that are not disclosed properly (or at all) in the Independent Contractor Agreement.

89.     These deductions include "Trippak" fees and drug test fees.

90.     For example, General Freight Experts, Inc. deducted $120 from Plaintiff's compensation for "10 Trippaks" and $45 for "drug test" in the first payment it issued to him.

91.     The deductions also include a direct deposit fee of $5 per pay statement, listed as "ACHFEE."

92.     The direct deposit fee is charged even when drivers are not receiving any compensation.

93.     For example, Plaintiff's last pay statement was in a negative amount, and he did not receive any compensation, but General Freight Experts, Inc. still deducted the $5 "ACHFEE."

94.     These deductions are not properly disclosed.

95.     General Freight Experts, Inc.'s practice of charging contractor drivers for "Trippaks," drug tests, and/or an "ACHFEE" is effectively forcing contractor drivers to purchase goods and/or services from them.

96.     General Freight Experts, Inc.'s agreements with contractor drivers do not satisfy the requirements of the Truth-in-Leasing regulations.

97.     Additionally, General Freight Experts, Inc. has not adhered to the terms of its contracts with its contractor drivers.

98.     General Freight Experts, Inc.'s retention of portions of drivers' earnings as set forth above constitutes an improper windfall for Defendants.

99.     Contractor drivers have suffered harm and have sustained damages from Defendants' actions, including (*inter alia*) improper retention of compensation owed to drivers, improper deductions from their earnings, and overcharging for fuel.

**FLSA ALLEGATIONS**

100.     Defendant General Freight Experts, Inc. employs both company (employee) drivers and contractor drivers, who lease the trucks they drive from General Freight Experts, Inc.

101.    On information and belief, Plaintiff and other drivers classified as independent contractors perform the same services for Defendant General Freight Experts, Inc. as drivers the company classified as employees.

102.    Plaintiff Wiltone Florexil was classified by Defendant General Freight Experts, Inc. as a contractor driver while he performed services for Defendants.

103.    On information and belief, Defendant General Freight Experts, Inc. drafted the terms of the Independent Contractor Agreement.

104.    Defendant General Freight Experts, Inc. classified Plaintiff as an independent contractor when he was really the company's employee.

105.    On information and belief, Defendant General Freight Experts, Inc. classifies all drivers who entered the Independent Contractor Agreement (or a similar document) as independent contractors when they are really the company's employees.

106.    Plaintiff and other drivers classified as independent contractors were economically dependent on Defendant General Freight Experts, Inc.

107.    The Independent Contractor Agreement expressly prohibits Plaintiff and other independent contractor drivers from working for other carriers without written permission from Defendant General Freight Experts, Inc.

108.    Defendant General Freight Experts, Inc. had exclusive authority over the rates customers would be billed for the services Plaintiff and other drivers provided.

109.    Defendant General Freight Experts, Inc. issued all bills to its customers for the services Plaintiff and other drivers provided.

110.     Defendant General Freight Experts, Inc. collected all compensation from its customers for the services Plaintiff and other drivers provided.

111.     Defendant General Freight Experts, Inc.'s customers did not pay Plaintiff or other drivers for their services.

112.     Defendant General Freight Experts, Inc. was solely responsible for paying Plaintiff and other drivers for the services they provided to General Freight Experts, Inc.'s customers.

113.     Defendant General Freight Experts, Inc. determined the method and rate used to compensate Plaintiff and other drivers for their services.

114.     Defendant General Freight Experts, Inc. paid Plaintiff and other drivers a percentage of the amount the company billed its customers for the services Plaintiff and other drivers provided.

115.     Defendant General Freight Experts, Inc. determined the percentage/amount it paid Plaintiff and other drivers of the amount the company billed its customers for the services Plaintiff and other drivers provided.

116.     Defendant General Freight Experts, Inc. determined the types of deductions and chargebacks it took from the compensation paid to Plaintiff and other drivers.

117.     Defendant General Freight Experts, Inc. determined the amounts of the deductions and chargebacks it took from the compensation paid to Plaintiff and other drivers.

118.    Defendant General Freight Experts, Inc. determined whether and when it would take deductions and chargebacks from the compensation paid to Plaintiff and other drivers.

119.    Defendant General Freight Experts, Inc. determined how to calculate any deductions and chargebacks it took from the compensation paid to Plaintiff and other drivers.

120.    Defendant General Freight Experts, Inc. determined the types of insurance policies Plaintiff and other drivers were required to obtain.

121.    Defendant General Freight Experts, Inc. determined the pay periods during which Plaintiff and other drivers received compensation for their services.

122.    The Independent Contractor Agreement required Plaintiff and other independent contractor drivers to have their trucks inspected every 30 days by Defendant General Freight Experts, Inc. or its designated third-party.

123.    Defendant General Freight Experts, Inc. provided Plaintiff and other independent contractor drivers with equipment (e.g. trailers) they needed to perform services for Defendants and/or Defendants' customers.

124.    Plaintiff and other drivers were subject to monetary penalties "for keeping [Defendant General Freight Experts, Inc.'s] trailer[s] out of use. [sic] e.g. vaction [sic], days off, personal time etc."

125.    Plaintiff and other drivers were subject to monetary penalties if they did not turn in certain documents and/or information to Defendant General Freight Experts, Inc. on a weekly basis.

126.    Defendant General Freight Experts, Inc. audited and reviewed the daily logs of Plaintiff and other independent contractor drivers.

127.    Defendant General Freight Experts, Inc. subjected Plaintiff and other independent contractor drivers to a variety of personnel policies, rules, and/or punishments that controlled and/or directed their activities and/or conduct while they performed services for Defendants and/or their customers.

128.    For example, a document titled "Rules For Drivers," which is attached as Exhibit D, sets forth numerous rules and/or punishments, with the statement "DISOB[E]YING ANY OF THE FOLLOWING RULES MAY RESULT IN $100 TO $500 FINE AND MAY LEAD TO TERMINATION."  These rules include:

a.   "The driver is **obligated to be on the phone at all times** and have to pick up the phone from **the dispatcher and the broker** unless safety reasons apply."

b.   "If the driver late for pick up or delivery he **must** let the dispatcher know **immediately** and there will be no detention or layover paid under no circumstances."

c.   "A 50$ fee may be applied for late pick up or delivery **if no valuable explanation is provided by the driver**."

d.   "If the driver has any issue before or during transit he must inform his dispatcher **immediately**."

18

e. "If there is any **shortages, overages or damages** as well as any unsatisfactory notes on the BOL the driver **must let the dispatcher know** immediately."

f. "It is driver[']s responsibility to **check BOL after loading and unloading**, and if the BOL and rate confirmation does not match let the **dispatcher know immediately**."

g. "If the driver paid cash for Lumper on the delivery or pick **up he must let his dispatcher know**."

h. "Every driver has to have no less that **200$** cash at all times."

Exhibit D.

129.    Defendant General Freight Experts, Inc. subjected Plaintiff and other independent contractor drivers to a schedule of disciplinary procedures and punishments for violations of its policies and/or federal regulations.  The procedures and punishments are set forth in a document titled "DISCIPLINARY PROCEDURES FOR COMPANY POLICY  & FMCSR VIOLATIONS," which is attached as Exhibit E.

## CLASS ALLEGATIONS - TRUTH-IN-LEASING CLAIM

130.    Plaintiff brings his Truth-in-Leasing claims against Defendants General Freight Experts, Inc., General Freight Experts LLC, and TRR Cargo LLC as a class action pursuant to Fed. R. Civ. P. 23 for and on behalf of the following class for which Plaintiff seeks certification:   All persons who executed contracts to become contractor drivers with General Freight Experts, Inc. since May 10, 2019.

131.    This case may be maintained properly as a class action under Fed. R. Civ. P. 23(a), 23(b)(1), 23(b)(2) and/or 23(b)(3).

132.    The class is so numerous that joinder of all potential class members is impracticable.  On information and belief, the class is comprised of hundreds of drivers or more.  Plaintiff does not know the exact size of the class since that information is within the control of Defendants.

133.    There are questions of law or fact common to the class that predominate over any individual issues that might exist. Common questions of law and fact include: the terms of contracts between Defendants and contractor drivers; compensation paid to contractor drivers; the amounts and nature of deductions made from contractor drivers' earnings; and the costs Defendants charged drivers for fuel.

134.    The class claims asserted by Plaintiff are typical of the claims of potential class members.  Defendants operate in a highly regulated industry that requires them to maintain standard operating procedures and uniform policies, procedures, and practices and adhere to laws and regulations governing motor carriers.  Plaintiff's and all class members' claims for damages can readily be calculated from Defendants' business records.

135.    Plaintiff will fairly and adequately protect and represent the interests of the class.  His interest in challenging the unlawful practices of Defendants motivates him to bring this case as a class action.  Plaintiff retained the undersigned counsel, who are experienced in class actions generally and on behalf of individuals working in the trucking industry.

136.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The alternative – numerous identical lawsuits alleging similar or identical causes of action – would not serve the interests of judicial economy and the prosecution of separate actions by the individual potential class members would create a risk of inconsistent or varying adjudications with respect to individual potential class members that would establish incompatible standards of conduct for Defendants.  Moreover, some class members – particularly current drivers – may be reluctant to bring their claims individually for fear of retaliation by Defendants.

137.     Public policy supports the broad remedial purposes of class actions in general and specifically to vindicate the rights afforded by the Truth-in-Leasing regulations to drivers, whose individual claims may be too small to warrant the expense of litigation.

138.     This class action will not be difficult to manage due to the uniformity of claims among the class members and the amenability of wage and hour cases to both class litigation and the use of representative testimony and representative documentary evidence.

139.     The contours of the class will be easily defined by reference to business records kept by Defendants.

140.     Defendants have acted on grounds generally applicable to the class.

## COLLECTIVE ALLEGATIONS – FLSA CLAIM

141.     Plaintiff brings FLSA wage claims for all hours worked against Defendant General Freight Experts, Inc. on behalf of a collective of drivers pursuant to 29 U.S.C. § 216(b).

142.     Pending any modifications necessitated by discovery, Plaintiff preliminarily defines the collective as follows:  All individuals who Defendant General Freight Experts, Inc. engaged as an independent contractor drivers during the applicable statutory period and who did not timely receive an hourly rate equal to or exceeding federal minimum wage for all hours worked.

143.     These claims meet the requirements for collective action certification under the FLSA.

144.     All potential opt-in plaintiffs are similarly situated with respect to the FLSA claims concerning minimum wage because Defendant General Freight Experts, Inc. engaged all of them as independent contractor drivers but failed to pay them an hourly rate equal to or exceeding federal minimum wage for all the hours they worked.

## CLAIMS FOR RELIEF

### COUNT I:
### TRUTH-IN-LEASING CLAIMS (AGAINST ALL DEFENDANTS)

145.     Plaintiff re-alleges and incorporates by reference all previous paragraphs of this Complaint as if fully rewritten herein.

146.     Defendant General Freight Experts, Inc. is a motor carrier licensed with the U.S. Department of Transportation.

22

147.   Defendants General Freight Experts, Inc., General Freight Experts LLC, and TRR Cargo LLC are affiliated entities with common ownership and common officers, subject to the requirements of authorized carriers under the Truth-in-Leasing regulations.

148.   Defendants General Freight Experts, Inc., General Freight Experts LLC, and TRR Cargo LLC have violated the Truth-in-Leasing regulations, as set forth above, including non-payment and untimely payment of drivers' compensation, improper, undisclosed and/or excessive deductions from compensation, including, without limitation, for failure to submit paperwork, fuel, supplies, and fees, and forced purchases of goods and/or services.

149.   The terms of Defendants' contracts with contractor drivers have not adhered to the Truth-in-Leasing regulations, and Defendants have not adhered to the terms of the contracts.

150.   Pursuant to 49 U.S.C. § 14704(a), Defendants General Freight Experts, Inc., General Freight Experts LLC, and TRR Cargo LLC are liable to Plaintiff and the other drivers for the damages that they suffered on account of Defendants' violations of the Truth-in-Leasing regulations and are also liable for injunctive relief to remedy those violations.

**COUNT II:**
**FLSA CLAIMS (AGAINST DEFENDANT GENERAL FREIGHT EXPERTS, INC.)**

151.   Plaintiff re-alleges and incorporates by reference all previous paragraphs of this Complaint as if fully rewritten herein.

152.    Defendant General Freight Experts, Inc. violated the FLSA, as detailed above, by failing to pay Plaintiff and other independent contractor drivers an hourly rate equal to or exceeding minimum wage for all the hours they worked for General Freight Experts, Inc.

153.    Defendant General Freight Experts, Inc. is liable to Plaintiff and other independent contractor drivers for the damages that they suffered on account of its violations of the FLSA.

**JURY DEMAND**

Plaintiff hereby demands a jury on all claims so triable.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Court grant the following relief:

a.    Certification of this action as a class action under Rule 23(b)(1), 23(b)(2) and 23(b)(3);

b.    Appointing Plaintiff Wiltone Florexil as class representative and his counsel as class counsel;

c.    A judgment against Defendants General Freight Experts, Inc., General Freight Experts LLC, and TRR Cargo LLC for all damages that contractor drivers sustained as a result of its violations of the Truth-in-Leasing regulations, including but not limited to restitution for all compensation not paid and/or untimely paid, improper deductions and chargebacks made, all amounts improperly retained by Defendants in excess of costs or expenses, and all other damages;

24

d.      Injunctive relief requiring Defendants General Freight Experts, Inc., General Freight Experts LLC, and TRR Cargo LLC to comply fully with the Truth-in-Leasing regulations in its contracts, payment of compensation, and deductions and chargebacks from contractor drivers' earnings;

e.      Pre- and post-judgment interest;

f.      Attorneys' fees and costs, pursuant to 49 U.S.C. § 14704(e);

g.      Certification of an opt-in class for Plaintiff's FLSA claims against Defendant General Freight Experts, Inc. pursuant to the FLSA, 29 U.S.C. § 201, *et seq.*;

h.      Permission for Plaintiff to notify fellow drivers of their right to opt into this action to pursue a claim against Defendant General Freight Experts, Inc. under the FLSA, pursuant to 29 U.S.C. § 216(b);

i.      An award of damages against Defendant General Freight Experts, Inc. for all minimum wages, unlawful wage assignments, and other unpaid wages that are due to Plaintiff and all similarly situated independent contractor drivers under the FLSA;

j.      Statutory liquidated damages against Defendant General Freight Experts, Inc. under the FLSA;

k.      A finding that Defendant General Freight Experts, Inc.'s violation of the FLSA was willful and that, therefore, the statute of limitations for the FLSA claim is three years;

l.      Attorneys' fees, costs, and/or interest.

m.      Any other relief as this Court deems just and proper.

Respectfully submitted,

WILTONE FLOREXIL, individually and on
behalf all others similarly situated,

By their attorneys,


 */s/ Osvaldo Vazquez*
Osvaldo Vazquez, Esq.
        Florida Bar No. #70995
Hillary Schwab, Esq.
        *Pro hac vice* application forthcoming
Rachel Smit, Esq.
        *Pro hac vice* application forthcoming
Brook Lane, Esq.
        *Pro hac vice* application forthcoming
        FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
Tel:  (617) 607-3260
Fax:  (617) 488-2261
oz@fairworklaw.com
hillary@fairworklaw.com
rachel@fairworklaw.com
brook@fairworklaw.com

Dated: May 10, 2023